IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| In re: Frank Scott Dabney and Kathryn Harrelle Dabney,<br><br>    Debtors,<br>_____<br>Frank Scott Dabney and Kathryn Harrelle Dabney,<br><br>    Plaintiffs-Appellants,<br><br>v.<br><br>Bank of America, N.A.; Specialized Loan Servicing, LLC; Shellpoint Mortgage Servicing; and The Bank of New York Mellon,<br><br>    Defendants-Appellees.<br>_____ | Civil Action No. 2:19-cv-3225-BHH<br><br><br><br><br><br><br>**ORDER** |

In this action, Plaintiffs-Appellants Frank Scott Dabney and Kathryn Handle Dabney ("the Dabneys" or "Plaintiffs") appeal from an order of the United States Bankruptcy Court for the District of South Carolina, which granted Defendants-Appellees' motion for summary judgment. Defendants-Appellees are Bank of America, N.A. ("BANA"), Specialized Loan Servicing, LLC ("SLS"), Shellpoint Mortgage Servicing ("Shellpoint"), and The Bank of New York Mellon ("BONYM") (collectively referred to as "Defendants"). For the reasons set forth below, the Court affirms the Bankruptcy Court's order granting Defendants' motion for summary judgment.

## **BACKGROUND**

Plaintiffs initially filed a complaint against Defendants on March 30, 2017, in the United States Bankruptcy Court for the District of South Carolina, raising claims arising out

of an alleged discrepancy between the interest rate provision contained in an adjustable rate note ("Note") executed by Plaintiffs and an Adjustable Rate Mortgage Rider ("Rider") simultaneously executed by Plaintiffs.  Specifically, the Note does not provide for an adjustable interest rate floor while the Rider does provide for an adjustable interest rate floor of 8.00%.

In November of 2017, the Bankruptcy Court granted Bank of America's motion for judgment as a matter of law, finding that the Note and Rider should be read as a single, unified transaction to provide for the adjustable rate floor of 8.00%.  The Dabneys appealed the Bankruptcy Court's order to this Court, and the Honorable Richard M. Gergel found that "[t]he loan documents, read together as a whole, are capable of being understood as having an interest rate floor and as not having an interest rate floor." *Dabney v. Bank of Am.*, No. 2:17-3151-RMG, 2018 WL 3306896, *5 (D.S.C. July 3, 2018).  Thus, Judge Gergel found the loan documents ambiguous and noted that parol evidence might resolve the ambiguity.  *Id.*  Judge Gergel therefore vacated the Bankruptcy's order granting judgment as a matter of law in favor of Bank of America and remanded the matter for further proceedings.  *Id.*

On remand, the Bankruptcy Court allowed Plaintiffs to file an amended complaint on January 15, 2019, which raised new claims.  The court also allowed the parties the opportunity for discovery.  The parties completed discovery on June 5, 2019, and Defendants filed motions for summary judgment.  The Bankruptcy Court held a hearing on July 25, 2019, and ultimately granted summary judgment in favor of Defendants and denied Plaintiff's motion for relief under Rule 56(d) of the Federal Rules of Civil Procedure in a written order filed on October 25, 2019.  Also, in a written order filed on August 13, 2019,

the Bankruptcy Court denied Plaintiffs' motion to extend the time for discovery, finding that Plaintiffs failed to demonstrate diligence during the discovery period that constitutes good cause for an extension under Rule 16(b)(4).

Plaintiffs filed the instant appeal on November 14, 2019. In their appellate brief, Plaintiffs assert that the Bankruptcy Court committed reversible error by: (1) "refusing to address the forged note submitted by and relied upon by the Appellees"; (2) "refusing to allow the Dabneys to amend their complaint and further investigate the forgery their attorneys discovered"; (3) "refusing to order relief under Fed. R. Civ. P. 56(d)"; and (4) dismissing the Dabneys' causes of action under the Truth In Lending Act ("TILA"), Rule 3002.1, and the South Carolina Unfair Trade Practices Act ("SCUTPA"). (*See* ECF No. 9 at 2-3, 15-35.)

## **STANDARDS OF REVIEW**

### I.     **Bankruptcy Appeals**

This court has jurisdiction to hear appeals from final orders of the bankruptcy court. 28 U.S.C. § 158; *see, e.g.*, *In re Kirkland*, 600 F.3d 310, 314 (4th Cir. 2010) (noting the district court's "capacity as a bankruptcy appellate court"). The standard of review of a bankruptcy appeal by a district court is the same as when a court of appeals reviews a district court proceeding. *See* 28 U.S.C. § 158(c)(2). Accordingly, the bankruptcy court's findings of fact are reviewed under a "clearly erroneous" standard. Fed. R. Bankr. P. 8013. A finding of fact is clearly erroneous when the entire record demonstrates convincingly to the reviewing court that "a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *United States v. Hall*, 664 F.3d 456, 462 (4th Cir. 2012). A bankruptcy court's conclusions of law are subject to de novo review. *In re Biondo*, 180

F.3d 126, 130 (4th Cir. 1999); *In re K & L Lakeland, Inc.*, 128 F.3d 203, 206 (4th Cir. 1997). Thus, a district court reviews the Bankruptcy Court's grant of summary judgment de novo under Rule 56 of the Federal Rules of Civil Procedure

## II.     Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court shall grant summary judgment if a party shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

## III.     Motions to Amend

When a movant seeks to amend his pleading after the scheduling order deadline for doing so has passed, courts conduct a two-step analysis. *Dilmar Oil Co. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C.), *aff'd sub nom. Dilmar Oil Co. v. Federated Mut. Ins. Co.*, 129 F.3d 116 (4th Cir. 1997). First, a court considers whether the movant can demonstrate "good cause" for seeking modification of the scheduling deadline under Rule 16(b). *Id.* (emphasis in original). If the movant satisfies Rule 16(b)'s "good cause" standard, then a court considers whether the movant can satisfy the requirements for amendment under Rule 15(a). *Smith v. United Parcel Serv., Inc.*, 902 F.Supp. 719, 720

4

(S.D.W.V. 1995); *Marcum v. Zimmer*, 163 F.R.D. 250-254 (S.D.W.V. 1995); *Forstmann v. Culp*, 114 F.R.D. 83, 85-86 (M.D.N.C. 1987); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992).

Rule 16 of the Federal Rules of Civil Procedure assures the Court and the parties that "at some point both the parties and the pleadings will be fixed." *Jordan v. E.I. du Pont de Nemours*, 867 F.Supp. 1238, 1250 (D.S.C. 1994) (citing *Johnson*, 975 F.2d at 610). Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a). Rule 16(b) does not focus on the bad faith of the movant or the prejudice to the opposing party; rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. *Smith*, 902 F.Supp. at 720; *Marcum*, 163 F.R.D. at 254; *Forstmann*, 114 F.R.D. at 85; Johnson, 975 F.2d at 609.

Rule 15 of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). A motion to amend the complaint under Rule 15(a) should be made "as soon as the necessity for altering the pleading becomes apparent." *Id.* at 41 (internal citation omitted). "The law is well settled 'that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)) (emphasis in original). To deny a motion to amend for futility, the amendment must be "clearly insufficient on its face." *Oroweat Foods Co.*, 785 F. Supp. 2d at 819.

### IV.     Federal Rule of Civil Procedure 56(d)

Rule 56(d) provides the following:

**When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain evidence or declarations or take discovery; or

(3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

## DISCUSSION

As an initial matter, the Court finds that oral argument is not necessary for this appeal, and the Court decides this case based on the arguments presented in the parties' briefs, the record on appeal, and the applicable law.

### I.    The Bankruptcy Court's Refusal to Address the Alleged Forged Note and the Bankruptcy Court's Refusal to Allow the Dabneys to Amend their Complaint

The Dabneys allege that they discovered the existence of two separate adjustable rate notes for the same loan (a 3% note and a 1% note, with the latter alleged to be forgery) while reviewing discovery on or about May 23, 2019.  (ECF No. 9 at 16.)  The Dabneys assert that there is overwhelming evidence that the 1% note is a forgery and that Defendants have not controverted this evidence.  The Dabneys further assert that they raised the issue before the Bankruptcy Court by moving for additional time for discovery and by setting forth the discrepancies between the two notes in their reply to Defendant's response to the their motion for additional time.  According to the Dabneys, the Bankruptcy Court erred by refusing to hold Defendants in contempt for the alleged forgery.  The

6

Dabneys also contend that the existence of two notes and one paper-clipped allonge creates a genuine issue of material fact requiring reversal of the Bankruptcy Court's decision. Related to the aforementioned arguments, the Dabneys assert that the Bankruptcy Court abused its discretion when it failed to allow the Dabneys to amend their complaint.

After review, the Court is not persuaded by any of the Dabneys' arguments. First, as the Bankruptcy Court properly noted, "neither Plaintiff's Complaint nor their Amended Complaint in this proceeding assert a forgery of the Note or violation of any statute or rule arising from this forgery." (ECF No. 1 at 19.) The Bankruptcy Court specifically acknowledged Plaintiffs' assertion that they did not discover the alleged forgery until after receiving Defendants' discovery on April 19, 2019, but the Bankruptcy Court noted that, "since that discovery, they have not filed a motion to amend the Amended Complaint to include allegations regarding the forgery of the Note, and merely included what purports to be a request for amendment in an affidavit of Plaintiffs' counsel attached to their objection to the Motions and as a footnote in their proposed order regarding the Motions."[1] (*Id.*) As the Bankruptcy Court also properly noted, "Plaintiffs cannot defend Defendants' Motions by reference to unalleged theories and claims because asserting new claims in a brief submitted in opposition to a motion for summary judgment is procedurally improper." (*Id.* at 19.)

On appeal, Plaintiffs argue that counsel did make an oral motion to amend their

---

[1] In its order, the Bankruptcy Court also explained that "Plaintiffs did not seek leave to amend their Amended Complaint prior to the hearing on the Motions, and they have not offered any justification for failing to seek leave to amend." (ECF No. 1 at 19.)

7

pleadings to conform to the evidence at the July 2019 summary judgment hearing. However, the Bankruptcy Court previously acknowledged this argument by noting: "Plaintiffs' counsel *alluded* to a motion to amend the Complaint during the hearing on the Motion for Summary Judgment, but he did not make an express motion and the Court indicated that it would not hear arguments on a motion to amend at that time." (*Id.* at 18, n.10 (emphasis added).)  Indeed, after the Court's independent review of the transcript of the July 2019 hearing, the Court agrees with the Bankruptcy Court that Plaintiffs' counsel only alluded to a motion to amend but did not make an express motion, as he simply indicated only that he "*would* make" such a motion under certain circumstances. (*See*, *e.g.*, ECF No. 8-2 at 23. ("[E]ven assuming that we have waived the issue of a signature–which I would argue we have not and, if we have, of course I *would* make a motion to amend our complaint, to conform with the evidence, because this is evidence that only arrived in the past couple of months. So I *would* make that motion." (emphasis added).)

As the Bankruptcy Court explained, "[u]nder South Carolina law regarding actions with respect to a negotiable instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings." (*Id.* (citing S.C. Code Ann. § 36-3-308.)  Thus, the Court finds no error in the Bankruptcy Court's conclusion that, because Plaintiffs never denied the authenticity of their signatures in their pleadings (or during their depositions), Plaintiffs are deemed to have admitted the authenticity of the signatures.

Ultimately, the Court finds no error in the Bankruptcy Court's determination that the Dabneys were precluded from relying on un-alleged theories in opposition to Defendants' motion for summary judgment.  Furthermore, the Court finds no error in the Bankruptcy

Court's determination that the Dabneys did not timely move to amend their complaint. In addition, the Court notes that even if Plaintiffs' counsel's allusion to a motion to amend at the July 2019 hearing was sufficient to be considered an express motion to amend, the Bankruptcy Court would not have abused its discretion in denying the motion. The Bankruptcy Court denied the Dabneys' prior motion to extend deadlines, finding that the Dabneys failed to demonstrate good cause for the requested extension. (*See* ECF No. 8-1.) This Court finds no error in the Bankruptcy Court's analysis on this point.

Additionally, in its order granting summary judgment, the Bankruptcy Court found that Plaintiffs offered no justification, let alone good cause, for failing to seek leave to amend prior to the July 2019 hearing. (ECF No. 1 at 19.) This Court likewise finds no error in the Bankruptcy Court's analysis on this point and further finds no evidence of good cause to support a motion to amend that would have been untimely under the scheduling order.[2] Based on the foregoing, the Court finds that the Bankruptcy Court did not commit reversible error by refusing to address the alleged forged note or refusing to allow the Dabneys to amend their complaint and further investigate the alleged forged note.

## II.   The Bankruptcy Court's Denial of the Dabneys' Rule 56(d) Motion

Next, the Dabneys assert that the Bankruptcy Court abused its discretion in denying their motion for relief pursuant to Rule 56(d). After review, the Court finds no merit to the Dabneys' argument.

First, the Dabneys did not file a specific motion for relief under Rule 56(d); rather,

---

[2] Moreover, the Court notes that the proposed amendment would have been futile in light of the Bankruptcy Court's finding that the loan unambiguously requires an 8% interest rate floor. (*See* ECF No. 1 at 20 ("Because the interest rate has never adjusted from 8% for the duration of the loan and no adjustments up or down have been made, whether the interest rate would change 1% or 3%, if it ever changed, is of no consequence to the matters raised in the Amended Complaint.").)

Plaintiffs' counsel included a paragraph in his declaration attached to Plaintiffs' objections to the motion for summary judgment, stating: "I believe that the issue of the conflicting notes requires further discovery and would ask this Court to provide appropriate relief under Rule 56(d) of the Federal Rules of Civil Procedure." (ECF No. 3-5 at 119.)

Next, the Bankruptcy Court previously denied the Dabneys' motion for extend deadlines in an order filed August 13, 2019, and the Dabneys have not appealed that ruling. In the August order, the Bankruptcy Court explained that it was denying Plaintiffs' requested relief "based upon Plaintiffs' overall lack of diligence in utilizing discovery mechanisms to timely complete discovery according to the Scheduling Order and failure to satisfactorily explain why the discovery deadline set forth in the Court's Scheduling Order could not have been met with their diligent effort, among other reasons." (ECF No. 1 at 41.) After review, the Court finds no error, let alone reversible error, in the Bankruptcy Court's denial of relief under Rule 56(d) based on "Plaintiffs' failure to demonstrate any new evidence, changed circumstances, or other reason justifying relief since the hearing on the previous Motion for an extension of time for discovery." (*Id.*)

### III.    The Dabneys' Remaining Claims

On appeal, the Dabneys assert that the Bankruptcy Court erred in dismissing their causes of action under TILA, Rule 3002.1, and SCUTPA. The Dabneys first argue that the Bankruptcy Court erred by failing to consider the alleged forged note and by using that failure as a basis for dismissing Plaintiffs' claims. The Dabneys also argue that even ignoring the forgery issue, there is a genuine issue of material fact as to the existence of an interest rate floor.

The Court is not persuaded by the Dabneys' arguments. As explained above, the

Court does not find any error in the Bankruptcy Court's refusal to consider the alleged forged note, or in the Bankruptcy Court's refusal to allow the Dabneys to amend their amended complaint. Moreover, the Court notes that this case was previously remanded for the Bankruptcy Court to consider parol evidence, but on remand, Plaintiffs did not offer any parol evidence to show that the loan documents do not contain an interest rate floor. (*See* ECF No. 1 at 18.) After review, the Court agrees with the Bankruptcy Court that "in the absence of any parol evidence indicating a contrary intent of the parties," the Note and the Rider, which were executed on the same day, should be read as one unified document, giving effect to all provisions. Thus, the Court also finds no error, let alone reversible error, in the Bankruptcy Court's conclusion "that the interest rate provisions in the APR expand and clarify the interest rate provisions contained in the Note, such that the maximum interest rate chargeable under the Loan documents is 14%, and the minimum interest rate chargeable under the Loan documents is 8%." (*Id.* at 21.) Therefore, Plaintiffs' assertion that a genuine issue of material fact exists as to the existence of an interest rate floor is without merit.

In addition to the foregoing, Plaintiffs assert that the Bankruptcy Court erred in its alternative bases for granting summary judgment on Plaintiffs' claims. The Court also finds these arguments without merit, as explained in greater detail below.

  **A. Truth In Lending Act**

Plaintiffs assert that the limitations period for their TILA claim (and other claims) was tolled pursuant to the doctrine of fraudulent concealment. However, the Bankruptcy Court specifically considered this argument and found that there is nothing in the record to indicate that Plaintiffs were prevented from discovering any alleged TILA violation as a

result of fraudulent concealment by Defendants. (ECF No. 1 at 23.) The Court agrees.

As an additional matter, the Court notes that Plaintiffs do not allege fraudulent concealment in their Amended Complaint, which is required under Rule 9(b) of the Federal Rules of Civil Procedure.

Ultimately, after review of the parties' briefs, the evidence of record, and the applicable law, the Court finds no error in the Bankruptcy's Court's conclusions that (1) Defendants did not originate the loan and are not liable as assignees for TILA violations under 15 U.S.C. § 1641; (2) Plaintiffs' TILA claim based on the failure to make disclosures at closing is barred by the statute of limitations; (3) Plaintiffs are not entitled to equitable tolling of the statute of limitations on the basis of fraudulent concealment; (4) any claims based on notices sent prior to May 30, 2016, are time-barred; and (5) the post-2016 notices included the information required by statute. Thus, the Court finds that the Bankruptcy Court properly granted summary judgment on the Dabneys' TILA claims.

**B.     Federal Rule of Bankruptcy Procedure 3002.1**

The Bankruptcy Court held that the Dabneys were not entitled to relief under Rule 3002.1 because the claim was based on the Dabneys' theory that the interest rate for the loan should have been lower than 8% and their theory that the 1% note was forged and not applicable–theories the Bankruptcy Court rejected as previously explained. The Bankruptcy Court also observed that Plaintiffs entered into a settlement agreement on August 4, 2014, "wherein they agreed to the amount of the regular monthly payments to be paid on the Loan and made such payments throughout the course of their bankruptcy case without objection, and ultimately benefitted by the curing of their default and maintenance of payments on the Loan and by avoiding the sale of their home in the state

foreclosure action." (ECF No. 1 at 26.)

On appeal, the Dabneys argue that the August 2014 settlement order does not prohibit their Rule 3002.1 claim, or any other claim. Specifically, Plaintiffs argue that the reservation of rights language contained in the chapter 13 plan is sufficient to preserve their rights to pursue pre-confirmation causes of action, citing *In re Russo-Chestnut*, 522 B.R. 148, n. 10 (Bankr. D.S.C. 2014), in support.

As Defendants point out in their brief, however, the Dabneys' reliance on *In re Russo-Chestnut* is misplaced because that case holds that a debtor can reserve certain pre-confirmation claims in its chapter 13 plan with certain form language. Here, the Dabneys' chapter 13 plan was confirmed in December of 2013, and the Dabneys' Rule 3002.1 claims are based on allegations that Defendants failed to file payment change notices after the proof of claim for the loan was filed in February of 2014. Thus, the Court finds no merit to Plaintiffs' argument and finds that the Bankruptcy Court properly determined that the Dabneys are not entitled to relief under Rule 3002.1.

**C.     South Carolina Unfair Trade Practices Act**

The Bankruptcy Court granted summary judgment in favor of Defendants on the Dabneys' SCUTPA claim, noting that the Dabneys offered no evidence that any of Defendants' alleged actions impact the public interest. The Dabneys assert on appeal that Defendants' conduct does affect the public interest, claiming that Countrywide Home Loans, predecessor of BANA, engaged in severe and systemic fraud and that the standard nature of the loan forms is sufficient to prove that Defendants' fraudulent conduct in originating, servicing, and collecting this loan affects the public interest. The Court finds the Dabneys' assertions entirely conclusory and unsupported be evidence in the record,

and the Court thus finds that the Bankruptcy Court properly granted summary judgment in favor of Defendants on the Dabneys' SCUTPA claim.

## CONCLUSION

Based on the foregoing, the Court finds no basis to reverse the Bankruptcy Court's order granting Defendants' motion for summary judgment. Accordingly, the Bankruptcy Court's order dated October 25, 2019, which granted summary judgment in favor of Defendants, is hereby **AFFIRMED.**

**AND IT IS SO ORDERED.**

/s/Bruce H. Hendricks
United States District Judge

March 23, 2021
Charleston, South Carolina